**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In re PRESTON H. SMIRMAN,

                       Movant.

                                        /

Case No. 09-51223
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 12, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on non-party Preston Smirman's ("Smirman") motion to quash subpoena. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Smirman's motion is GRANTED IN PART.

**II. BACKGROUND**

The underlying lawsuit in this matter was filed in the United States District Court for the Middle District of North Carolina and concerns alleged infringement of patents issued for cartridge chips used in aftermarket or refurbished laser-printer toner cartridges. *See Static Control Components, Inc. v. Future Graphics, LLC*, No. 1:08-cv-00109 (M.D.N.C. filed Feb. 14, 2008). A company named Powervip SA ("Powervip") manufacturers the cartridge chips at issue. Powervip

is not a party to the North Carolina action.[1] Defendant Future Graphics, LLC, ("Defendant") purchased the allegedly-infringing cartridge chips from Powervip and re-sold the products.

Smirman is a patent attorney whom Powervip retained to provide his opinion whether Powervip's cartridge chips infringe Plaintiffs' patents. Due to their business relationship, Powervip and Defendant agreed to a "Common Interest and Information Sharing Agreement" and an "Indemnity and Cost Sharing Agreement." As part of the common-interest agreement, Powervip provided Defendant with the Smirman opinions. Based on the Smirman opinions, Defendant elected to rely on an advice-of-counsel defense to Plaintiffs' allegations of willful patent infringement.

Plaintiffs served Smirman with a subpoena issuing from this court noticing Smirman's deposition and seeking the production of documents. Smirman has moved to quash the subpoena.

### III. LEGAL STANDARD

Rule 45(c) of the Federal Rules of Civil Procedure permits a party to a suit to seek discovery through a subpoena to a nonparty. Upon a timely motion, the Court must quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). Whether a burden is undue requires weighing "the likely relevance of the requested material . . . against the burden . . . of producing the material." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994). Courts also consider one's status as a nonparty to be a significant factor in the undue-burden analysis. *See, e.g.*, *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be

---

[1]Powervip has, however, filed a declaratory-judgment action in the United States District Court for the Western District of Michigan against Plaintiffs regarding the same patents. *See Powervip, Inc. v. Static Control Components, Inc.*, No. 1:08-cv-00382 (W.D. Mich. filed Apr. 25, 2008).

permitted. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996); *see also Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995).

## IV. ANALYSIS

The resolution of this matter requires the Court to analyze two distinct questions of privilege. The first encompasses Powervip's sharing of documents and information with Defendant. The second involves the effect of Defendant's election to rely on an advice-of-counsel defense in the North Carolina lawsuit.

### A. Common-Interest Doctrine

Smirman first contends that any communications or disclosures between Powervip and Defendant remain privileged because the parties have entered into a common-interest agreement, the terms of which include the sharing of otherwise privileged information. The agreement prohibits either party from using information obtained under the agreement in a manner that would waive a privilege or immunity.

"The joint defense privilege preserves the confidentiality of communications and information between two or more parties and their counsel who are engaged in a joint defense effort." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 250 F.R.D. 575, 580 (D. Colo. 2007).[2] *See also Dura Global, Techs., Inc. v. Magna Donnelly Corp.*, No. 07-10945, 2008 WL 2217682, at *1 (E.D. Mich. May 27, 2008) ("The parties agree that the common interest privilege permits the disclosure of privileged communication without waiving the privilege[.]").

When parties enter into a common-interest agreement, any privileged communications

---

[2]The Court will hereafter refer to this case as "*Lexmark*" to avoid confusion with Plaintiff Static Control Components, Inc. or with the underlying North Carolina case.

remain privileged unless all parties agree to waive that privilege. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 817 (7th Cir. 2007); *DuraGlobal*, 2008 WL 2217682, at *2. The doctrine does not confer an additional layer of privilege; rather, it protects the transmission of otherwise privileged material. *See, e.g.*, *Lexmark*, 250 F.R.D. at 579.

The parties do not dispute the validity of the common-interest agreement. Information exchanged between Powervip and Defendant pursuant to that agreement did not therefore result in a waiver of either party's attorney-client privilege. Any waiver of the privilege must come from a source independent of the common-interest agreement.

**B. Advice-of-Counsel Defense**

Defendant has elected to proceed on an advice-of-counsel defense to Plaintiffs' claims of willful patent infringement. "Once a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived." *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006).[3] This waiver applies not only to the attorney's opinion letters but to "'all other communications relating to the same subject matter.'" *Id.* (citing *Fort James Corp. v. Solo Cup. Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)).

In addition to waiving the attorney-client privilege, invoking the advice-of-counsel defense can also constitute a waiver of the work-product doctrine. "Work-product waiver extends only so

---

[3]The Court is bound to apply the law of the Federal Circuit "when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." *Adv. Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001). "[Q]uestions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law[.]" *In re Echostar*, 448 F.3d at 1298.

far as to inform the court of the *infringer's* state of mind." *In re Echostar*, 448 F.3d at 1303. In the seminal case on advice-of-counsel work-product waiver, the *In re Echostar* court identified three categories of work product:

> (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter;
>
> (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and
>
> (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client.

448 F.3d at 1301. The court concluded that categories (1) and (3) were not privileged materials in an advice-of-counsel case, but that category (2) remained privileged. *Id.* at 1304.

**C. Application**

Armed with this background, the Court turns to the subpoena at issue in this case. The subpoena requires Smirman to:

> 1. Produce your entire file, including but not limited to any correspondence, emails, drawings, charts, specifications, diagrams, photographs, notes, journals, diaries or documents of whatever type reviewed and/or relied upon in support of the preparation of any infringement or non-infringement opinions prepared for, or on behalf of, Powervip, Inc. or Powervip SA, and relate to Patent No. 7,088,928 ("the '928 patent"); Patent No. 7,254,346 ("the '346 patent"); Patent No. 7,187,874 ("the '874 patent"); Patent No. 7,286,774 ("the '774 patent") and Patent No. 7,221889 ("the '886 [sic] patent").
>
> 2. Produce all documents, technical data, emails, correspondence, drawings, specifications, notes, diagrams, or descriptions supplied to you by Powervip, Inc. or Powervip SA for your review in connection with the opinions referenced in item Number 1 above.

> 3. Produce all correspondence, e-mails, telegrams, facsimiles, telexes, received from or sent to any persons(s) associated with Future Graphics LLC, Future Graphics Imaging Corporation and/or Mitsubishi Kagaku Imaging Corporation concerning or relating to the opinions referenced in item Number 1 above.
>
> 4. Produce all notes, memoranda or records that relate to or concern any meetings between you and any person(s) associated with Future Graphics LLC, Future Graphics Imaging Corporation and/or Mitsubishi Kagaku Imaging Corporation concerning or relating to the opinions referenced in item Number 1 above.

*See* Smirman's Mot. to Quash Subpoena Ex. 4. In addition, the subpoena notices Smirman's deposition.

Smirman objects to the subpoena on the following grounds: (1) Smirman's communications with Powervip are subject to the attorney-client privilege; (2) the requested materials include trade secrets and other confidential research; and (3) the subpoena seeks information outside the scope of the opinions provided to Powervip. Smirman requests that the Court modify the subpoena consistent with these objections.

Plaintiffs maintains that Powervip waived its attorney-client privilege when it provided the Smirman opinions and other information to Defendant in preparation for this matter. Plaintiffs also suggest that a protective order would be appropriate to the extent that the subpoena requires the disclosure of trade secrets or other confidential matters.[4]

---

[4]There is a protective order in place in the North Carolina litigation. Smirman disagrees that a protective order is sufficient, and he contends that Plaintiffs' response brief proves his point, as it contains two unsealed exhibits that allegedly violate the protective order. In response, Plaintiffs filed a motion to seal the offending documents [dkt 6], to which Smirman has not filed a response. The Court GRANTS Plaintiffs' unopposed motion to seal. Any alleged violations of the protective order entered in the underlying case, however, are properly heard by the issuing court.

If the parties determine that a protective order specific to this subpoena is necessary, they may submit a <u>stipulated</u> protective order within 10 days of the entry of this order for the Court's

"The thrust of the Federal Circuit's decision in *In re Echostar* is simply that when a party asserts the advice of counsel defense to willful infringement, it waives any claim of privilege or immunity it has with respect to all communications that **the client received**, at whatever time and from whatever counsel, on the issue of the alleged infringement. . . . That, however, is as far as the waiver goes." *Lexmark*, 250 F.R.D. at 580. Thus, communications between Defendant and any lawyer, including Smirman, regarding Defendant's potential infringement are subject to discovery. *See Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 1:05-cv-01411, 2009 WL 3381052, at *14 (E.D. Cal. Oct. 15, 2009) ("[The defendant] must respond to any interrogatories, and produce any documents, relating to this subject, including any communications with counsel other than in-house counsel.").

The Court finds the *Lexmark* case extremely persuasive. In *Lexmark*, the co-counter-defendant companies, including Static Control and Pendl, had agreed to a joint-defense agreement. Pendl decided to rely on an advice-of-counsel defense based on an opinion by a lawyer named Becker. The counter-plaintiff, Lexmark, issued a subpoena to a law firm called Bartlit Beck, which represented Static Control, seeking information about the Becker opinion. Bartlit Beck did not represent Pendl, and while it had communicated with Pendl's lawyers, it had never directly communicated with Pendl.

The *Lexmark* court determined that Bartlit Beck was not the proper source from which to obtain discovery regarding the Becker opinion. It concluded that *In re Echostar* "requires the disclosure only of materials and information provided to Pendl, and does not require the disclosure of information provided to Pendl's lawyers but never communicated to Pendl itself." *Id.* at 580. The

---

review.

court further noted that Bartlit Beck should not bear the burden of sifting through the information it provided to Pendl's lawyers and determining what information actually reached Pendl. Instead, that information should have been sought from Pendl or the Pendl lawyers.

Here, Smirman prepared his opinions directly for Powervip, which in turn provided the opinions to Defendant. Defendant is the alleged infringer here, and the "client" for waiver purposes; not Powervip. Considering that the crux of an advice-of-counsel defense is the knowledge of the alleged infringer, *see In re Echostar*, 448 F.3d at 1303, the only relevant materials are those that were ultimately provided to Defendant.

Paragraphs 1 and 2 of the subpoena relate to information and documentation relied upon by Smirman in formulating his opinions and have no relevance unless such information was also supplied to Defendant. *See id.* ("Work-product waiver extends only so far as to inform the court of the infringer's state of mind. Counsel's opinion is not important for its legal correctness."). To the extent that Smirman himself provided Defendant with any of the information requested in Paragraphs 1 and 2 of the subpoena, such documentation is discoverable and properly subpoenaed. Based on Smirman's representations that he never directly communicated with Defendant, there may be no such documentation for Smirman to provide. If such information was provided to Defendant by a party other than Smirman (*e.g.*, Powervip), such information may be discoverable, but it would unduly burden Smirman if he were required to identify and produce that information. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv); *see also Lexmark*, 250 F.R.D. at 580–81. Such information should instead be obtained from Defendant or Powervip. *See Lexmark*, 250 F.R.D. at 581.

The information sought in Paragraphs 3 and 4[5] of the subpoena is properly discoverable because it contemplates Smirman's direct communications with or regarding Defendant. These requests mirror what the *In re Echostar* court described as category (1) and (3) work product, both of which the court found discoverable. Again, it is not clear whether Smirman possesses any such documentation. If he does, he must produce it.

**D. Deposition**

The Court must also address Smirman's deposition. Smirman does not object to testifying regarding the substance of his opinions prepared for Powervip. He does object to testifying to "opinions based on facts or circumstances not contained in Mr. Smirman's opinions," claiming that he would be forced to testify as an unretained expert. *See* Fed. R. Civ. P. 45(c)(3)(B)(ii). Plaintiffs did not attempt to clarify the parameters of their intended deposition, nor did they directly respond to this objection. The Court will therefore require that Smirman's deposition be limited to the substance of his Powervip opinions.

Smirman also fears that Plaintiffs' questioning will require the divulgence of privileged communications and/or trade secrets and other confidential information. As discussed *supra*, the relevant inquiry is the knowledge of the alleged infringer (*i.e.*, Defendant). Smirman's and Powervip's discussions, strategies, thought processes, or other communications have no relevance unless they were subsequently disclosed to Defendant. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery on any nonprivileged matter *that is relevant* to any party's claim or defense . . . .")

---

[5]Future Graphics Imaging Corporation and Mitsubishi Kagaku Imaging Corporation are each referenced in Paragraphs 3 and 4 of the subpoena. Neither entity is a party to the North Carolina action, and their relationship to this litigation is unclear. Therefore, the Court will not require Smirman to provide any information sought under Paragraphs 3 and 4 as it pertains to Future Graphics Imaging Corporation and Mitsubishi Kagaku Imaging Corporation.

9

(emphasis added). Such information also falls into the second *In re Echostar* category and remains privileged if not disclosed to the client. *See In re Echostar*, 448 F.3d at 1304.

Accordingly, if Smirman disclosed to Defendant any information or communications outside of his opinions, Plaintiffs may question Smirman about that information at the deposition. Once again, if Smirman did not have direct contact with Defendant, Plaintiffs must seek the information elsewhere. *See Lexmark*, 250 F.R.D. at 581 (quashing subpoena noticing deposition of opposing counsel when that counsel had no direct contact with the co-client).

Therefore, the Court will limit the scope of Smirman's deposition to (1) the substance of his opinions; and (2) any other information communicated directly to Defendant by Smirman regarding Plaintiffs' patents.

### E. Conclusion

The above ruling ensures that Plaintiffs are able to discover all information that Defendant became aware of from Smirman directly. Smirman has no duty to provide information that Defendant derived from Powervip or any other source.

Finally, because the above requirements will not place a great burden on Smirman, the Court does not find it necessary to grant Smirman's request for an award of costs or attorney fees for his compliance with the subpoena.

### V. CONCLUSION

Accordingly, and for the above-stated reasons, IT IS HEREBY ORDERED that Smirman's motion to quash subpoena [dkt 1] is GRANTED IN PART;

IT IS FURTHER ORDERED that Plaintiffs' unopposed motion to seal Exhibits D and E to their response brief [dkt 6] is GRANTED.

IT IS SO ORDERED.


                                       S/Lawrence P. Zatkoff
                                       LAWRENCE P. ZATKOFF
                                       UNITED STATES DISTRICT JUDGE

Dated: May 12, 2010

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 12, 2010.


                                       S/Marie E. Verlinde
                                       Case Manager
                                       (810) 984-3290